UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JACOBY & MEYERS, LLP and JACOBY & MEYERS
USA, LLC,

                    Plaintiffs,

                -against-                              11 Civ. 3387 (LAK)


THE PRESIDING JUSTICES OF THE FIRST, SECOND,
THIRD AND FOURTH DEPARTMENTS, APPELLATE
DIVISION OF THE SUPREME COURT OF THE STATE
OF NEW YORK,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION


Appearances:


                David J. Meiselman
                James R. Denlea
                Jeffrey I. Carton
                MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ, P.C.
                *Attorneys for Plaintiffs*


                Daniel A. Schulze
                Michael J. Siudzinski
                Assistant Attorneys General
                ERIC T. SCHNEIDERMAN
                ATTORNEY GENERAL OF THE STATE OF NEW YORK
                *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

Lawyers in the United States are not now permitted to obtain equity investments in their practices from non-lawyers, which precludes them from, among other things, selling stock in their practices to the public. The law firm of Jacoby & Meyers, LLP ("J&M")[1] and an affiliate here seek a declaration that Rule 5.4 of the Model Code of Professional Conduct, as adopted in New York, which is among the New York laws and regulations that embody that principle, is unconstitutional.[2] They argue that the prohibition on non-lawyer equity investment imposes higher capital costs and thus impairs their ability to expand what they characterize as their mission to provide lower cost legal services to those who cannot afford more traditional lawyers.

The advisability of allowing non-lawyer equity investment and, perhaps ultimately, public offerings of shares in law practices has become a much debated topic. Permitting it, as J&M contends, conceivably might broaden the availability and lower the cost of legal services without serious adverse consequences. On the other hand, it instead might prove to be "a deal with the devil," as some have argued was the case when traditionally private investment banking partnerships went public.[3] But those, at least in the first instance, are issues for the legislatures and professional rule-setting bodies that govern lawyer conduct. The issue before this Court on defendants' motion

---

[1]     The original complaint in this action identified the plaintiff as Jacoby & Meyers Law Offices, LLP. According to an official record of the New York Department of State, the firm was organized under that name but changed its name in 2000 to Jacoby & Meyers, LLP. The caption was amended accordingly. DI 19.

[2]     Amended Complaint ("Cpt") ¶¶ 52-80. The original complaint included various state law and other claims which are not included in the amended complaint. DI 1.

[3]     *E.g.*, James Surowiecki, *Public Humiliation*, NEW YORKER, Sept. 29, 2008, at 30, *available at* http://www.newyorker.com/talk/financial/2008/09/29/080929ta_talk_surowiecki.

3

to dismiss is far more limited – whether plaintiffs have standing to raise the constitutional claims they advance.

The fundamental problem is this.  Rule 5.4 is not the only provision of New York law that forecloses plaintiffs from receiving non-lawyer equity investment.  But plaintiffs challenge only Rule 5.4.  Indeed, they explicitly disclaim any challenge to other provisions of New York law,[4] each of which independently would prevent them from doing what they say they wish to do.  Thus, plaintiffs could not accept non-lawyer equity investments even if they won on the merits of their constitutional claims. Plaintiffs therefore could not, consistent with New York law, practice law and accept equity investments from non-lawyers even if Rule 5.4 were declared unconstitutional.  Hence, the ruling that they seek would be a purely advisory declaration of the sort that is forbidden to federal courts under Article III of the U.S. Constitution.

*Facts*

*Rule 5.4*

The starting point for this motion is Rule 5.4 of the New York Rules of Professional Conduct, which provides in relevant part, with exceptions not pertinent to this case:

"(a) A lawyer or law firm shall not share legal fees with a nonlawyer . . .

\*   \*   \*

"(d) A lawyer shall not practice with or in the form of an entity authorized to practice law for profit, if:

---

[4]

Tr., Nov. 3, 2011, at 22, 24.

4

"(1) a nonlawyer owns any interest therein . . . ."[5]

*The Parties*

    *Plaintiffs*

        There now are two plaintiffs in this case, J&M and Jacoby & Meyers USA, LLC ("J&M LLC").  J&M LLC allegedly was formed "for the express purpose of allowing non-lawyers to 'own an interest' in the entity through which [J&M] is authorized to practice law for profit."[6]

    *J&M*

        J&M is a New York-based law firm with eleven offices around the state, offices in Connecticut and New Jersey, and affiliates of some undescribed sort in California, Alabama, Florida, and Arizona, perhaps among other states.[7]  It allegedly employs "nearly 100 professionals"[8] and is a limited liability partnership registered under Article 8-B of the New York Partnership Law.[9]  As registration is limited, in relevant part, to "partnership[s] without limited partners," each of whom is a professional in the relevant field,[10] all of J&M's partners must be lawyers.  Its partners

---

[5]
    22 N.Y.C.R.R. § 1200.0, Rule 5.4.

[6]
    Cpt ¶ 14.

[7]
    *Id.* ¶¶ 13, 29.

[8]
    *Id.* ¶ 13.

[9]
    Registration is a prerequisite to the limitation of liability that is the attraction of the limited liability partnership form.  N.Y. P'SHIP LAW § 26(b).

[10]
    *See id.* § 121-1500(a)(I).

5

therefore are subject to Rule 5.4 either as members of the New York Bar or, if admitted to practice only elsewhere, to the extent those individuals perform legal services in New York.[11]

### J&M LLC

J&M LLC is a limited liability company under New York law and was formed in response to defendants' argument that the original complaint should be dismissed because J&M lacked standing.[12]  According to the amended complaint, J&M "is prepared immediately to transfer all of its assets to [J&M LLC] and immediately obtain non-lawyer investment – as soon as Rule 5.4's blanket suppression of non-lawyer ownership of an interest in law firms is declared unconstitutional and its enforcement permanently enjoined."[13]

### Defendants

Defendants are the presiding justices of the Appellate Division of the New York Supreme Court for each of its four departments.  According to the amended complaint, they or their predecessors promulgated Rule 5.4, and they are responsible under state law for its implementation and enforcement.[14]

---

[11]

22 N.Y.C.R.R. § 1200.0, Rule 8.5.

[12]

Defendants argued that J&M lacked standing because the New York Partnership Law provides that limited liability partnerships must be "partnership[s] without limited partners," each of whom is a professional in the relevant field. N.Y. P'SHIP LAW § 121-1500(a)(I).

[13]

Cpt ¶ 14.

[14]

Id. ¶ 15.

*Plaintiffs' Alleged Standing*

The amended complaint goes on at some length with respect to what plaintiffs characterize, perhaps hyperbolically, as J&M's "pioneer[ing]" efforts to provide "legal services for the masses."[15]  As the present motion turns principally on the question of whether J&M and J&M LLC have standing to challenge Rule 5.4, it suffices to address the allegations relevant to that subject.

The amended complaint asserts that J&M "requires a substantial infusion of new capital."[16]  Traditional means of obtaining the necessary funds, such as capital contributions by partners and commercial bank loans, however, allegedly are too expensive or are unavailable to fund its business plans.[17]  At one point, it asserts that Rule 5.4 has prevented it from "entertain[ing] the numerous offers it has received from prospective non-lawyer investors . . . who are prepared to invest capital in exchange for owning an interest in the firm."[18]  The amended complaint lists also a handful of "high net-worth individuals . . . [who] have expressed their commitment to invest

---

In fact, New York Judiciary Law § 90, subd. 2, vests "power and control over attorneys and counsellors-at-law" in the Supreme Court generally, with the power to discipline attorneys being conferred upon its Appellate Divisions. McKinney's Consolidated Laws state that the Rules of Professional Conduct were adopted by the Justices of the Supreme Court, Appellate Division.  29 MCKINNEY'S CONSOL. LAWS OF N.Y. ANN., Rules DR 2-107 to End, at 143 (Supp. 2011). The assertion that the presiding justices are responsible for the implementation and enforcement of the Rules of Professional Conduct, at least to the extent that the assertion implies that each of them alone bears such responsibility, thus appears to be directly at odds with the controlling statute.

[15]

Cpt ¶¶ 22-30.

[16]

*Id.* ¶ 33.

[17]

*Id.* ¶¶ 33-34.

[18]

*Id.* ¶ 34.

significant sums of money in [J&M] in exchange for owning an interest . . . in the entity through which [J&M] practices law."[19]  Elsewhere it alleges that "[b]ut for the proscriptions of Rule 5.4 . . . [J&M] would have already consummated these investments and allowed non-lawyers to own an interest in the legal entity through which it practices law."[20]

## *Discussion*

Standing is an essential prerequisite to Article III jurisdiction.  The standing inquiry has three elements: a "plaintiff must allege [1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief."[21]  Put another way, a plaintiff must allege an "injury in fact" that is (1) "concrete," "particularized," and "actual or imminent," (2) "fairly traceable to the challenged action of the defendant," and (3) redressable "by a favorable decision."[22]

Although a plaintiff must allege all three elements of Article III standing to establish federal jurisdiction, the central issue here involves the second and third elements.[23]  Simply put, the critical questions are whether Rule 5.4 is causing plaintiffs' alleged injury and whether the ruling

---

[19]

*Id.* ¶ 35.

[20]

*Id.* ¶ 36.

[21]

*Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[22]

*Lujan*, 504 U.S. at 560-61.

[23]

Defendants do not argue that plaintiffs fail to allege an actual injury in the amended complaint.  DI 27.

8

they seek, a declaration that Rule 5.4 is unconstitutional, would eliminate it. Plaintiffs argue that both questions should be answered affirmatively because Rule 5.4 prohibits them from obtaining non-lawyer equity investment and because it is the only such obstacle. Defendants, on the other hand, contend that J&M and J&M LLC are foreclosed by the New York Partnership Law and Section 495 of the Judiciary Law, respectively, from accepting equity investments from non-lawyers.[24] Because defendants argue that these statutes prohibit plaintiffs' proposed non-lawyer equity investment regardless of Rule 5.4, they assert that plaintiffs have failed to allege that Rule 5.4 caused their injury or that invalidating it would redress any such injury.

The Court addresses the situation of each plaintiff separately.

*J&M LLC*

Section 495 of the Judiciary Law, which is entitled "Corporations and voluntary associations not to practice law," provides in relevant part:

> "1.     No corporation or voluntary association shall
>
> (a) practice or appear as an attorney-at-law for any person in any court in this state or before any judicial body, nor
>
> (b) make it a business to practice as an attorney-at-law, for any person, in any of said courts, nor
>
> (c) hold itself out to the public as being entitled to practice law, or to render legal services or advice, nor
>
> (d) furnish attorneys or counsel, nor

---

[24]     As the Court finds arguments related to Judiciary Law § 495 and New York's Partnership Law dispositive, it does not consider whether plaintiffs' proposed non-lawyer equity investment would violate other provisions of the Judiciary Law as defendants assert. DI 26, at 8-9.

(e) render legal services of any kind in actions or proceedings of any nature or in any other way or manner, nor

(f) assume in any other manner to be entitled to practice law, nor

(g) assume, use or advertise the title of lawyer or attorney, attorney-at-law, or equivalent terms in any language in such manner as to convey the impression that it is entitled to practice law or to furnish legal advice, services or counsel, nor

(h) advertise that either alone or together with or by or through any person whether or not a duly and regularly admitted attorney-at-law, it has, owns, conducts or maintains a law office or an office for the practice of law, or for furnishing legal advice, services or counsel."

\* \* \*

4.   "Subdivisions one and two of this section shall not apply to any corporation or voluntary association lawfully engaged in a business authorized by the provisions of any existing statute."

\* \* \*

7.   "This section does not apply to organizations which offer pre-paid legal services . . . or to organizations which have as their primary purpose the furnishing of legal services to indigent persons."[25]

Plaintiffs argues first that Section 495 perhaps does not apply to J&M LLC because the statute applies only to "corporation[s] and voluntary association[s]," whereas J&M LLC is a limited liability company.[26]   Assuming *arguendo* that the statute applies to limited liability companies, however, they argue that J&M LLC would be exempt because it would (1) be "lawfully engaged in a business" under New York's Limited Liability Company Law, and (2) provide pre-paid

---

[25]

N.Y. JUD. LAW § 495.

[26]

The Court notes that this argument is made only in a footnote, DI 29, at 14 n.5, and therefore properly may be disregarded. *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

10

legal services or have the provision of services to the indigent as its primary purpose, thus coming within subdivision 4 and/or 7 of Section 495.

*Applicability of Section 495 to Limited Liability Companies*

Assuming for the purposes of discussion that the suggestion that Section 495 perhaps might not apply to limited liability companies were properly before the Court, the suggestion would be without merit.

As an initial matter, this is not a question of first impression under Section 495.  In *In re Garas*,[27] at attorney formed a limited liability company, RCS, with a non-lawyer for the purpose of bidding on contracts with the United States Department of Housing and Urban Development to provide closing services on the sale of previously foreclosed properties.[28] Nonlawyer employees of RCS prepared deeds and attended closings on its behalf under limited supervision of the attorney.[29]   The Appellate Division held that the services provided by RCS constituted the practice of law and that its attorney member had violated Section 495 by, among other things, "forming a corporation with a nonlawyer for the provision of those services."[30]   The case therefore stands for the proposition that a limited liability company is a "corporation or voluntary association" within the meaning of Section 495 of the Judiciary Law.

---

[27]      65 A.D.3d 164, 881 N.Y.S.2d 744 (4th Dept. 2009).

[28]      *Id.* at 165.

[29]      *Id.*

[30]      *Id.* at 167.

Nor does *Garas* stand alone.  The phrase "corporation or voluntary association" appears elsewhere in New York statutes, notably Section 321 of the Civil Practice Law and Rules. That statute forbids corporations and voluntary associations from appearing in litigation *pro se*, requiring "that a corporation or voluntary association shall appear by attorney."[31]  And in *Carlo v. Yorro,*[32] among other cases, the court held that "[l]imited liability companies have the attributes of a voluntary association with corporate limited liability protection and therefore should be treated as such for the purposes of CPLR § 321(a)."[33]

Accordingly, even if plaintiffs had not waived the point, this Court would hold that J&M LLC is a "corporation or voluntary association" within the meaning of Judiciary Law Section 495.

### The Limited Liability Company Law

Plaintiffs argue that J&M LLC in any case would be exempt from Section 495 if it began practicing law because it would be lawfully engaged in a business under New York's Limited Liability Company Law ("LLC Law") and thus exempted by Section 495, subd. 4.

This argument relies on Section 201 of the LLC Law, which provides that a "limited

---

[31]

N.Y. CPLR § 201(a).

[32]

195 M.2d 762, 761 N.Y.S.2d 766 (Dist. Ct. Nassau Co. 2002).

[33]

195 M.2d at 766.  *Accord*, *Chase Bank USA, N.A. v. Cardello*, 27 M.3d 791, 792, 896 N.Y.S.2d 856 (N.Y. Civ. Ct. Richmond Co. 2010); *see In re Enron Creditors Recovery Corp.*, 380 B.R. 307, 315 (S.D.N.Y. 2008) (LLC is a "corporation" under indenture defining "corporation" to include corporations and voluntary associations, among other forms).

liability company may be formed under the chapter for any lawful business purpose . . . ."[34]  Simply put, plaintiffs assert that the "any lawful business purpose" language in the LLC Law would allow J&M LLC lawfully to engage in the practice law and thus exempt it from Section 495.  Plaintiffs, however, overlook the fact that more than a century ago, the New York Court of Appeals, in *In re Co-operative Law Co.*,[35] interpreted the phrase "any lawful business purpose" in New York's Business Corporations Law to exclude the "learned professions," including the practice of law.[36]

*In re Co-operative Law Co.* involved a situation quite similar to this one.  There, a corporation argued that a statute prohibiting corporations from practicing law[37] did not apply to it because it was authorized to practice law under a provision of the New York's Business Corporations Law that provided that a corporation could be formed for "any lawful business purpose."[38]  The New York Court of Appeals, however, rejected that argument and held that the practice of law was "not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts."[39]  Plaintiffs offer no persuasive basis for concluding that the holding of *In re Co-operative Law Co.* does not control this case.

---

[34]

       N.Y. LTD. LIAB. CO. LAW. § 201.

[35]

       198 N.Y. 479 (1910).

[36]

       *Id.* at 484.

[37]

       Section 495 was derived from the statute at issue in *In re Co-operative Law Co.*

[38]

       *Id.* at 483.

[39]

       *Id.* ("The legislature in authorizing the formation of corporations to carry on 'any lawful business' did not intend to include the work of the learned professions.  Such an innovation with the evil results that might follow would require the use of specific language clearly indicating the intention.").

Moreover, any doubt on the point, and this Court finds none, would be dispelled by another feature of the LLC Law.

Section 204(b)(2)(f) of the LLC Law provides that limited liability company names cannot include the words "attorney" or "lawyer" or any derivation thereof "unless the word or abbreviation . . . clearly denotes a purpose other than the practice of law."[40]  Moreover, certain definitions in the statute suggest that law firms must be organized as professional services limited liability companies ("PSLLCs"), instead of as limited liability companies generally, to practice law in New York.[41]  Section 1201 defines "profession" as "any practice as an attorney and counselor-at-law" and defines "professional" as "an individual duly authorized to practice a profession, a professional service corporation, a professional service limited liability company, a foreign professional service limited liability company, a registered limited liability partnership, a foreign limited liability partnership, a foreign professional service corporation or a professional partnership."[42]  Accordingly, the LLC Law reflects the fact that the Legislature accepted the applicability of the holding of *In re Co-operative Law Co.* to limited liability companies as a premise of the statute, as any other view would render inexplicable these provisions of the statute.

Finally, the very existence of PSLLCs undermines plaintiffs' argument that any limited liability company is permitted to practice law.  If law firms could organize themselves and

---

[40]

N.Y. LTD. LIAB. CO. LAW § 204(b)(2)(f).

[41]

The statute authorizes PSLLCs to practice law in New York.  *Id.* § 1203.

For clarity, the Court notes that PSLLCs, like limited liability companies generally, are allowed to use the abbreviation "LLC" in their names.  *Id.* § 1212(b).

[42]

*Id.* § 1201.

14

practice law as limited liability companies generally, they never would organize themselves as PSLLCs because PSLLCs are subject to greater restrictions,[43] have great potential liabilities,[44] and receive no meaningful benefits.[45]

   The Court therefore holds that limited liability companies generally – as opposed to PSLLCs – may not lawfully practice law in New York.[46]   J&M LLC would not be exempt from Section 495 on the theory plaintiffs advance.

   *Pre-Paid Legal Services*

   Plaintiffs' final argument is that J&M LLC would be exempt from Section 495 because it would provide pre-paid legal services and/or that its primary purpose would be to provide legal services to indigent people.  This argument fails for two reasons.

---

[43]

   *See id.* §§ 1203, 1204, 1206, 1207, 1209.

[44]

   *See id.* § 1205.

[45]

   The only "benefit" PSLLCs receive is the ability to use the term "lawyer" or "attorney" in their names. *Id.* §§ 204(b)(2)(f), 1212.

[46]

   Even assuming that J&M LLC had been organized as a PSLLC, it would lack standing because all members owning an interest in a PSLLC – like partners in a limited liability partnership – must be licensed professionals in the relevant field of practice. *E.g.*, *id.* § 1203. As J&M LLC seeks to allow non-lawyers to invest and 'own an interest' in the entity, the statutory provisions governing PSLLCs would bar this type of transaction regardless of Rule 5.4.

   Furthermore, defendants argue that J&M LLC cannot be registered as a PSLLC because it did not comply with the requirements necessary to register as a PSLLC under New York law. *See* DI 27, at 7-8; N.Y. LTD. LIAB. CO. LAW § 1203(b) (outlining the filing requirements for PSLLCs).  As J&M LLC could not sufficiently allege standing even if it were considered a PSLLC, the Court need not decide the merits of defendants' contentions regarding J&M LLC's filings.

First, there is nothing in the amended complaint that supports either assertion. Indeed, not even their memorandum suggests that J&M LLC's primary purpose would be to provide legal services to the indigent, and there are no factual allegations as to what its memorandum means by pre-paid legal services.[47]

Second, an entity seeking to provide pre-paid legal services or the primary purpose of which is to provide legal services to the indigent must file with the Appellate Division a statement "describing the nature and purposes of the organization, the composition of its governing body, the types of legal services being made available, and the names and address of any attorneys and counselors-at-law employed by the organization . . . ."[48]  But there is no allegation that J&M LLC has filed such a statement.  J&M LLC therefore cannot be considered an organization exempt from Section 495 under subdivision 7.[49]

In sum, Section 495 prohibits the practice of law by a corporation or voluntary association unless it falls within one of a few specified exceptions.  J&M LLC is a corporation or voluntary association within the meaning of the statute.  Although it argues that it falls within two of the statutory exceptions, its arguments are not persuasive.  Section 495 thus bars J&M LLC from practicing law, irrespective of Rule 5.4.  J&M LLC lacks standing because it fails to allege that Rule 5.4 caused or is causing its alleged injury or that invalidating that Rule would redress any such injury.

---

[47]

Furthermore, the amended complaint does not allege that J&M currently provides pre-paid legal services or that its primary purpose is to provide legal services to the indigent.

[48]

N.Y. JUD. LAW § 496; *see* DI 31, at 5.

[49]

*See Feinstein v. Att'y Gen. of N.Y.*, 326 N.E.2d 288, 36 N.Y.2d 199, 199 (1975).

*J&M*

J&M argued in opposition to the defendants' motion to dismiss the original complaint that New York's Partnership Law would not prohibit it, as a registered limited liability partnership, from practicing law, even if it admitted non-lawyer equity investors.[50]  Although plaintiffs' papers on the present motion argue that both plaintiffs have standing, plaintiffs no longer advance the argument originally made on behalf of J&M and thus appear to have abandoned it.  They now argue only that J&M LLC is not prohibited by Judiciary Law Section 495 from practicing law and receiving non-lawyer equity investment.[51]  Nevertheless, for the sake of completeness, the Court turns next to that now-abandoned argument, viz. that New York's Partnership Law does not bar J&M, as a limited liability partnership, from receiving outside equity investment from non-lawyers.

As an initial matter, Section 121-1500(a) of the Partnership Law, which applies to registered limited liability partnerships, provides in relevant part that:

> "Notwithstanding . . . any other provision of law, (i) a partnership without limited partners each of whose partners is a professional authorized by law to render a professional service within this state and who is or has been engaged in the practice of such profession in such partnership or a predecessor entity, or will engage in the practice of such profession in the registered limited liability partnership within thirty days of the date of the effectiveness of the registration provided for in this subdivision . . . may register as a registered limited liability partnership."[52]

Registration as a limited liability partnership is contingent upon, among other conditions, (a) each

---

[50]

DI 15, at 18.

The motion addressed to the original complaint was mooted by the filing of the amended complaint.

[51]

*Id.* at 13-15.

[52]

N.Y. P'SHIP LAW § 121-1500(a).

partner being "a professional authorized by law to render a professional service within this state," and (b) the absence of any limited partners.[53] Thus, if J&M allowed a non-lawyer to own an equity interest in the firm, it could not operate as a limited liability partnership.[54]

Although it is unclear if any additional statutes – beyond Rule 5.4 – would prevent non-lawyers from owning an interest in another type of partnership, J&M has not alleged or suggested that it would be willing to give up the advantage of limited liability or that it ever would operate as another type of partnership. The Court therefore need not consider whether a law firm operating as another type of partnership and seeking non-lawyer equity investment would have standing to challenge Rule 5.4.

Assuming *arguendo* that J&M's original argument had not been abandoned, it nevertheless would lack standing here because it fails to allege that Rule 5.4 caused its alleged injury or that invalidating the Rule would redress any such injury.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss the amended complaint for lack of subject matter jurisdiction [DI 26] is granted. Moreover, even if this Court perceived that

---

[53] The conditions must continue to be satisfied for registration to remain effective. *See id.* § 121-1500(g).

[54] *Id.*

18

the state statutes at issue here were unclear,[55] it would have abstained under *Pullman*[56] and stayed the action pending a state court resolution of the state law issues.

SO ORDERED.

Dated:        March 8, 2012

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[55]     *See* THE FEDERALIST, NO. 37, at 164-65 (James Madison) (Clinton Rossiter ed., 1961) ("When the Almighty himself condescends to address mankind in their own language, his meaning, luminous as it must be, is rendered dim and doubtful by the cloudy medium through which it is communicated.").

[56]     *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).  *Pullman* abstention is warranted when: (1) an unclear state law exists, (2) a federal constitutional issue depends on interpreting the state law, and (3) the state law can be interpreted in a manner that would avoid or modify the federal constitutional issue.  *See Greater N.Y. Metro. Food Council v. McGuire*, 6 F.3d 75, 77 (2d Cir. 1993).